**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kecia Hill, | No. CV-26-04202-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Tiempo Development & Management, et al., | |
| Defendants. | |

Plaintiff Kecia Hill believes her adult son, Jaquai Robert Williams, died because of mold in his apartment. Hill alleges the apartment complex, the office of the medical examiner and its employees, two funeral homes and their employees, and a private pathologist entered into a conspiracy to prevent Williams's true cause of death from being known. Hill has not stated any plausible federal claims for relief and those claims are dismissed with leave to amend. At this time, the federal claims appear to be the sole basis by which this case might be in federal court. Therefore, the court will await the amended complaint and its federal claims to determine whether the court should exercise supplemental jurisdiction over Hill's state-law claims.

## PROCEDURAL BACKGROUND

Hill appears to have used generative artificial intelligence to generate a flood of confusing and repetitive documents. On June 15, 2026, Hill filed five documents: 1) a complaint; 2) a request for electronic noticing; 3) an application to proceed in forma pauperis; 4) an "Emergency Motion for Extension of Time to File First Amended Complaint and Stay Procedural Deadlines Pending Retention of New Counsel"; and 5)

another "Emergency Motion for Extension of Time" that does not identify what deadline she seeks to extend. (Docs. 1-5.) Some of those filings contained the full name of a minor and the Clerk of Court placed most of these filings under seal. Before the court could take any action on Hill's initial filings, she filed another set of documents.

On June 17, 2026, Hill filed six more documents. It is difficult to determine the basis for each of the documents, but they are titled: 1) "Motion to Seal Limited Identifying Information Contained in the Complaint"; 2) "Motion to Seal Limited Identifying Information Contained in Plaintiff's Bare-Bones Motion"; 3) "Motion to Seal Limited Identifying Information Contained in Plaintiff's Emergency Motion"; 4) a second, and slightly different, "Motion to Seal Limited Identifying Information Contained in Plaintiff's Bare-Bones Motion"; 5) "Motion to Redact Limited Third-Party Decedent Identifying Information"; and 6) "Amended Redacted Complaint." (Docs. 8-13.)

Having read all of Hill's filings, it appears some of the June 15 filings contained a minor's full name and information regarding the remains of another decedent being handled by the Office of the Medical Examiner. The June 17 filings are Hill's attempts to seal most of her June 15 filings and amend her complaint to remove the minor's name and information about the other decedent. The amended complaint also corrects "transcription issues" that caused a portion of the original complaint to be illegible. (Doc. 13.) The amended complaint filed on June 17 is treated as Hill's amendment as of right such that it is operative complaint. Fed. R. Civ. P. 15(a)(1)(A). Because Hill has established she is entitled to proceed in forma pauperis, the court must determine whether the amended complaint states any claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii). It does not.

## FACTUAL BACKGROUND

As of June 2025, Williams was living in an apartment at the Grand Cortez Apartments. (Doc. 13 at 2.) Tiempo Development & Management and its "parent company" CPIC appear to own and operate that apartment complex. (Doc. 13 at 1-2.) On some unidentified date before June 2, 2025, Hill "lodged a formal enforcement complaint with the Arizona Attorney General's Office" regarding the conditions of Williams's

apartment. (Doc. 13 at 2.) (It is not clear if Hill and Williams lived in the same apartment or, if they did not, why Hill submitted a complaint regarding Williams's apartment.) After that complaint, Tiempo and CPIC performed "an internal mold test" that "confirmed hazardous toxic spore infestations." (Doc. 13 at 2.) Tiempo and CPIC then "downplayed the dangerous spore counts to [Williams], and failed to remediate the underlying structure." (Doc. 13 at 5.) On June 2, 2025, Williams died. (Doc. 13 at 4.)

After Williams's death, "a cross agency, post mortem conspiracy was activated by public and private actors." (Doc. 13 at 5.) Employees of the Office of Medical Examiner ("OME") took steps "to conceal the environmental poisoning, insulate the landlord from immense tort liability, and protect the OME from civil rights exposure." (Doc. 13 at 5.) The conspiracy involved a refusal "to collect basic forensic samples, including urine," as well as storing Williams's "blood inside improper storage tubes that were completely unsuited and inappropriate for mold antibody testing." (Doc. 13 at 5-6.) OME employees also "executed a retaliatory cancellation of a scheduled state autopsy the exact moment the family exercised their constitutional right to decline commercial organ harvesting." (Doc. 13 at 5.) OME employees "weaponized [Williams's] physical weight and BMI of 60 as a visual shortcut," claiming "they could determine the cause of death strictly by an 'external look.'" (Doc. 13 at 5.)

Because the OME "refused to alter their superficial exam process," Williams's "remains were transferred" to a funeral home "under a protective hold." (Doc. 13 at 6.) There is no explanation what this "protective hold" means. Upon arriving at Rose Manor Funeral Home, employees there "inflicted an unauthorized post-mortem puncture wound to the side of the neck." (Doc. 13 at 6.) This wound was made in connection with the funeral home's desire (as participants in the conspiracy) to "erase the scientific trace of the mold load before outside specialists could intervene." (Doc. 13 at 7.) A second funeral home, Legacy Funeral Home, was also involved somehow and also engaged in acts to cover up the mold. (Doc. 1 at 3.) Hill retained a private pathologist who initially confirmed "fungal hyphae inside [Williams's] liver and spleen." (Doc. 13 at 7.) But the private pathologist

later "execut[ed] a massive medical fabrication" by concluding Williams died of a blood clot from a pulmonary embolism, not mold exposure. (Doc. 13 at 7.)

Based on these events, Hill asserts three federal claims and ten state claims. The first federal claim is a 42 U.S.C. § 1983 claim for race discrimination against Maricopa County, OME, and OME employees. Hill alleges these defendants "operated an unconstitutional custom and practice of utilizing weaponized racial profiling to purposefully deny standard forensic protection, scene investigations, and equal protection to minority citizens." (Doc. 13 at 8.)   The second claim, brought against the same defendants as the first, is also a § 1983 claim. Hill describes this claim as "disability & BMI discrimination" based on defendants "weaponiz[ing] an unscientific visual shortcut based entirely on a physical BMI of 60 to cancel a scheduled state autopsy" and failing to conduct a competent investigation into Williams's death. (Doc. 13 at 8.) The third federal claim is identified as brought under 42 U.S.C. § 1985 against the same group of defendants as the first two claims, but also against Tiempo, CPIC, the private pathologist, two funeral homes, and multiple funeral home employees.

## ANALYSIS

### I.    Amended Complaint Does Not State a Claim for Relief

When a plaintiff is proceeding in forma pauperis, the complaint may proceed only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Hill's complaint is flawed in that it lists many defendants, but it does not identify which defendant took what actions, nor does it identify the actions underlying each claim

for relief. "It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Gibson v. City of Portland*, 165 F.4th 1265, 1289 (9th Cir. 2026). A court cannot meaningfully assess a complaint like Hill's where it does not state "who did what and, instead," consists of "only unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (simplified). At least for purposes of the federal claims, the complaint must be dismissed based on its vague and confusing nature. But there are other flaws in each federal claim that Hill should consider if she chooses to amend.

Hill's first claim is a § 1983 claim based on alleged race discrimination by Maricopa County, OME, and OME employees. This claim requires allegations the defendants were state actors and they "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). To sue Maricopa County, Hill would also need to allege it has a policy or practice that resulted in constitutional violations. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).

To the extent the court can understand Hill's first claim, she seems to believe various acts were taken based on race. But the amended complaint does not provide facts showing any defendant's actions were taken based on race. Instead, Hill alleges certain defendants acted out of "racial animus and bias," without further elaboration. (Doc. 13 at 3.) These are "mere conclusory statements" the court need not accept as true. *Iqbal*, 556 U.S.C. at 678. Hill has not stated a claim for relief based on race discrimination.

Hill's second § 1983 claim is based on allegedly unlawful discrimination based on disability and BMI. Hill bases this claim on allegations OME and its employees canceled a "state autopsy" and "weaponized [Williams's] physical weight and a BMI of 60 . . . that they could determine the cause of death strictly by an 'external look.'" (Doc. 13 at 5.) Any actions taken based on disability "are subject only to rational basis review."[1] *Payan v. Los*

---

[1] Even assuming Hill were bringing a "class of one" claim instead of one based on disability, the actions would still be subject to rational basis review. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

*Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021). This is a very low threshold that requires there be a "reasonably conceivable state of facts that could provide a rational basis for" the actions. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). A decision to not provide a "state autopsy" could be explained by many rational bases, such as a decision regarding the allocation of limited resources. *See Hotop v. City of San Jose*, 982 F.3d 710, 717 (9th Cir. 2020) (ordinance "easily" survived rational basis review because limited scope of ordinance prevented expenditure of "significant resources"). Hill has not stated a plausible § 1983 claim based on disability discrimination.

The third federal claim is brought under § 1985, but it "does not even identify the subsection or subsections of § 1985 under which [Hill is] suing." *Gibson*, 165 F.4th at 129. Hill may be attempting to allege a claim under § 1985(2) for obstructing justice, but that subsection of § 1985 deals with obstructing access to state or federal court. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 908 (9th Cir. 1993). Hill presents no coherent allegations establishing such interference. Hill also might be attempting to assert a claim under § 1985(3). That subsection requires allegations that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action, . . . and . . . the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (simplified). Hill has not alleged any class-based animus, so this claim is not plausible.

None of Hill's federal claims are plausible and those claims are dismissed. Hill has many state-law claims, but "[a] court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction." *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001). The court will assess the validity of the state-law claims only once it is clear Hill has stated federal claim such that this case might remain in federal court.

## II.    Leave to Amend

Hill is granted leave to file an amended complaint but if she chooses to do so she

must provide a much clearer explanation of the actions taken by each defendant and why she believes those actions render that defendant liable. In drafting an amended complaint, Hill must keep in mind that her current theory of a large conspiracy does not appear plausible. The current complaint alleges the entities that own and operate the apartment complex, Maricopa County, the OME and eight of its employees, two funeral homes and three of their employees, and a private pathologist entered into a conspiracy regarding the investigation of Williams's death. The goal of the conspiracy was to prevent "immense tort liability" for the apartment complex and liability against OME for "civil rights" violations. (Doc. 13 at 5.) There are no allegations of when or how the defendants entered into this conspiracy and instead of a vast conspiracy, there is an "obvious alternative explanation": Williams's death was not caused by mold exposure. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). In other words, at present it appears far more likely that six entities and twelve individuals *did not* conspire to prevent Hill from proving Williams's death was caused by mold.

## III. Procedural Matters

The amended complaint was a permissible amendment and there is no need for the original complaint containing the minor's full name to be publicly available on the docket. Therefore, the motion to seal the original complaint (Doc. 8) is granted. Hill's motion to proceed in forma pauperis (Doc. 3) also contains the minor's name and it is sealed. The amended complaint (Doc. 13) does not contain confidential information, and it is not sealed.

Based on the date of Williams's death, Hill believes the statute of limitations is about to expire or will expire in the very near future. Apparently in an attempt to avoid expiration of the statute of limitations, Hill filed her complaint but also filed an "emergency motion" for permission to file an amended complaint after she obtains counsel. (Doc. 4.) Hill also filed another "emergency motion" for extension of time, but that document consists of a single page containing the case caption. (Doc. 5.) Those motions do not contain any confidential information, and the motions to seal those filings are denied.

- 7 -

(Docs. 9-11) On their merits, the motion to file an amended complaint and for an extension of time are denied. Hill must state a viable claim for relief before the court will consider whether extensions of any deadlines are appropriate. Finally, Hill's "motion to redact limited third-party identifying information" appears to relate to the original complaint. (Doc. 12.) That complaint is sealed, and Doc. 12 is denied as unnecessary.

Hill's deluge of repetitive filings that are almost completely devoid of content cause grave concern for her ability to successfully litigate a federal case. It is not the role of the Clerk's Office to later redact pleadings in which Hill knowingly includes gratuitous confidential information, so future motions to retroactively redact or seal on that basis will be denied and the filings will appear on the public docket. Hill is also cautioned that the court will summarily strike repetitive or empty filings going forward with no further warning, and will consider imposing sanctions up to and including dismissal of the case. Further, the court calls Hill's attention to the artificial intelligence requirements the court now imposes:

Any party that uses generative artificial intelligence ("generative AI") in connection with filings in this matter must attach to the subject filing a separate declaration disclosing the use of generative AI and certifying that the filer, in the exercise of the filer's independent judgment, has personally reviewed and verified the content of the filing as accurate and in compliance with Federal Rule of Civil Procedure 11. The declaration must identify which, if any, portion of the filing incorporates Generative AI outputs. Any party who presents to the court a pleading, written motion, or other paper incorporating inaccurate or undeclared generative AI outputs, including but not limited to inaccurate or non-existent case citations, may be subject to sanctions without further warning.

"Generative AI" as used in the previous paragraph refers to large language models that accept user input and generate new content. Generative AI includes, but is not limited to, the tools available through ChatGPT, Claude, Copilot, DeepSeek, Google Gemini, and Grok.

Accordingly,

**IT IS ORDERED** the Application (Doc. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** the Motion to Seal (Doc. 8) is **GRANTED**. The complaint (Doc. 1) and application (Doc. 3) shall be sealed. This order shall not be sealed.

**IT IS FURTHER ORDERED** the emergency motions (Docs. 4, 5) shall not be sealed and are **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Seal the emergency motion for extension of time shall not be sealed (Doc. 9) and is **DENIED**.

**IT IS FURTHER ORDERED** the Motions to Seal (Docs. 10, 11) shall not be sealed and are **DENIED**.

**IT IS FURTHER ORDERED** the amended complaint (third party) Doc. 12 and amended complaint (Doc. 13) shall not be sealed.

**IT IS FURTHER ORDERED** the amended complaint (Doc. 13) is **DISMISSED WITH LEAVE TO AMEND**. No later than **July 10, 2026**, plaintiff shall file an amended complaint. That amended complaint must include all her federal and state claim. The Clerk of Court shall enter judgment and close this case if no amended complaint is filed by that date.

Dated this 29th day of June, 2026.

Honorable Krissa M. Lanham
United States District Judge